# Kling v. Tunstall.

## *Garnishment Suit.*

1. *Set-off by garnishee; must be specially pleaded.*—Where a garnishee's answer of not indebted, *etc.*, is contested, in order for the garnishee to obtain the benefit of a set-off against a debt due by him to the defendant, he must specially plead the set-off in answer to the issue tendered by the plaintiff.

2. *New firm assuming debt of old firm; insufficiency of evidence.*— Where there was evidence tending to show that a new firm assumed an indebtedness of an old firm to which it succeeded, but it did not appear when, nor upon what consideration, the assumption was made, nor that it was a part of the new firm's contract of partnership, nor that it was made afterwards and was supported by a valuable consideration, expressed in writing, subscribed by the promisors,—the evidence of the assumption, by reason of indefiniteness, was not sufficient to submit the question to the jury.

3. *Paying individual debt with partnership property; agreement be-*

*yond scope of partnership.*—Where the property of an old firm, subject
to a mortgage, passes to a new firm, the membership being changed,
an agreement that the mortgagee may apply the surplus proceeds of
a foreclosure sale to the payment of an unsecured debt due to him
from the old firm is not within the scope of the partnership, and
nothing less than the assent of all the members to it could bind the
partnership.

4. *Proof of account.*—Where, on a contest of a garnishee's answer,
the garnishee seeks to set-off an open account against a debt due by
him to the defendant, the original entries of the items of the account,
made in part by the garnishee, and in part by his clerk, are not ad-
missible as evidence of the correctness of the account, in the absence
of other evidence of the correctness of the items.

5. *Same.*—Where, on a contest of a garnishee's answer, the gar-
nishee seeks to set-off an open account against a debt due by him to
the defendant, and there is evidence of the correctness of the items in
the account introduced by the garnishee, the account so introduced
may be submitted to the defendant, examined as a witness, for his
testimony as to the correctness thereof.

6. *Liability of garnishee having in possesson effects of defendant; im-
proper judgment.*—It is erroneous to render judgment against a garni-
shee for the assessed value of personal property of the defendant in
his possession. The garnishee's liabilty to execution because of his
possession of such property can only follow his disobedience of the
proper judgment of the court ordering the delivery up of the prop-
erty on demand, as provided by section 2978 of the Code.

APPEAL from the Circuit Court of Baldwin.

Tried before the Hon. JAMES T. JONES.

Most of the material facts are stated in the opinion.
The final judgment was as follows : "It appearing to
the court that heretofore, at the present term of the
court, towit, on the 1st day of May, 1894, a judgment
was rendered upon a contest of the answer of August
Kling, a garnishee in the above entitled cause, ascertain-
ing and adjudging that the said garnishee was, at the
time of the service of the garnishment upon him, indebted
to the defendants in the sum of $334.43, and had in his
possession and under his control one endless chain, of
the value of $250.00, belonging to the defendants ; and it
further appearing to the court that the plaintiff in the
above entitled cause has this day recovered a judgment
against the defendants for the sum of five hundred and
forty one & 65-100 dollars ; now, therefore, upon the
motion of the plaintiff, it is hereby considered, ordered
and adjudged that the plaintiff have and recover of the

39

[Kling v. Tunstall.]

said garnishee, August Kling, the sum three hundred and thirty four & 43-100 dollars in the above entitled cause; and further have and recover of said garnishee, August Kling, the further sum of two hundred and seven & 22-100 dollars, together the costs of said cause, not to exceed the sum of forty two & 78-100 dollars, for which let execution issue."

S. B. BROWN and J. N. MILLER, for appellant.

GREGORY L. & H. T. SMITH, *contra.*

HEAD, J.—The appellee, Tunstall, sold property to David M. Paxton and John C. Williams, Sr., and, they being indebted to him on account thereof, he instituted suit against them by attachment, and caused appellant, Kling, to be summoned as garnishee. Complaint was regularly filed, and judgment obtained against the defendants. Judgment was rendered against the garnishee, upon contest of his answer of not indebted, &c., and from that judgment he prosecutes this appeal.

The garnishee, Kling, had loaned the defendants $3,500, the payment of which they had secured by mortgage on certain mill property. On the 24th day of August, 1893, he foreclosed the mortgage, and purchased himself, at the price of $4,150. There was then due him on the mortgage debt $3,500, with interest from February 7th, 1893, making $3,653.07. This left a balance of purchase money of $496.93, a part of which the garnishee testified he applied as follows: $56 for watchmen to take care of the mill property pending the sale; $6.50 for advertising the sale; and $100 for attorney's fees for advice and services in relation to the foreclosure of the mortgage, aggregating $162.50—leaving a balance of $334.43. Prior and to the time of the execution of this mortgage, there had been a partnership carrying on the milling business, composed of the defendant Paxson, and John C. Williams, Jr., and Henry Hall, and the garnishee held claims, on open account, against that firm. At the time the mortgage was given, a new partnership was formed to carry on the same business, composed, according to some of the evidence, of the members of the old firm and the defendant Jno. C. Williams, Sr., and, according to other evidence, of the de-

fendants, Paxson and John C. Williams, Sr., and John C
Williams, Jr.   This new firm, it is also claimed, became in-
debted to the garnishee on open account   The testimony
establishes, without conflict, that the two firms were so in-
debted to him, but questions are raised as to the amounts.
The   garnishee   testified   that,   pending   the   fore-
closure   of   the   mortgage,   both   defendants   (mort-
gagors)   assumed   these   debts,   and   authorized   him   to
bid, at the sale, a sum sufficient to satisfy the mortgage
and the debts so assumed. . Paxson testified that he and
Jno. C. Williams, Sr., and Jr., who, he says were the
members of the new firm, all assumed to pay garnishee
the indebtedness of the old firm, and that he, witness,
authorized garnishee to apply any surplus over and
above what was due on the mortgage, as far as neces-
sary, to the payments of the amount due him by both
the old and new firm.  He testified that the amount due
by the old firm was about $300.   John C. Williams, Sr.,
and Jr., testified that they never assumed or agreed to
pay said indebtedness of the old firm.   These matters
all occurred prior to the service of the garnishment.
The bill of exceptions recites that the mortgage debt,
and the expenses of $162.50 above referred to, were not
controverted by the plaintiff.   John C. Williams, Sr.,
testified (and it was not disputed) that the new firm
owed the debt which was secured by the mortgage, and
owned the property conveyed by the mortgage.   If this
be true, the garnishee was entitled to set off against the
unsecured indebtedness of the new firm so much of the
surplus purchase money as was equal to it; but, in or-
der to obtain the benefit of this principle, the set-off
should have been specially pleaded in answer to the is-
sue tendered the plaintiff, unless waived.   As the
judgment must be reversed upon other points, whereby
the plea may hereafter be interposed, if desired, we will
not consider whether it was waived by the course the
trial took.

 As we have seen, there was evidence tending to show
that all the members of the new firm assumed the in-
debtedness of the old firm to the garnishee.   The evi-
dence is indefinite on this point.   It does not appear
when, nor upon what consideration, the assumption was
made.   Unless it was a part of the new firm's contract
of partnership, or, if made afterwards, did not rest upon

a new valuable consideration moving from the old firm to the new, the assumption was of no binding force. Again, a direct promise to the garnishee to pay the old firm's debt, if such was the form of the assumption, in order to bind, must have been supported by a valuable consideration, and been manifested by writing, subscribed by the promissors, expressing the consideration. The evidence of the assumption, by reason of these indefinite features, was not sufficient to submit the question to the jury.

If the garnishee and *all* the members of the new firm (assuming that the new firm were the real owners of the property) had, pending the foreclosure, entered into an agreement by which the garnishee should bid enough for the property to pay the mortgage debt and expenses, and these open accounts, or either of them, and retain for the same, and the garnishee, accordingly, made the purchase, the agreement would have been valid, and authorized the retainer ; but there was no evidence that John C, Williams, Jr., entered into such an agreement. It was not one within the scope of the partnership, and nothing less than the assent of all the members to it could bind the partnership. This rule would not apply, if the mortgaged property had belonged alone to the mortgagors, Paxson and John C. Williams, Sr., and not to the new firm. In that case such an agreement between the garnishee and them only would have authorized the retainer. We do not consider how far a want of notice on the part of the garnishee that the mortgagors were not the only owners of the mortgaged property would have affected the agreement. The facts are not sufficient to raise the question.

The garnishee, in the effort to prove his open accounts against the two firms, testified that they together, including some interest, amounted to $366.93. He did not testify to the amount of either separately. Original entries of the items of the accounts, made in part by the garnishee, and in part by his clerk, could not, under any facts appearing in this case, be received as evidence of the correctness of the accounts. If the witness had personal knowledge and recollection of the correctness of the items, or any of them, he could of course testify to them ; or if he had no independent recollection of them, but could testify that he knew those which he

[Kling v. Tunstall.]

made himself were correct, at the time he made them, then such entries, made by him, would be received in aid of his testimony. Upon the hypothesis that the other evidence in the case justified the garnishee in making proof of the accounts, there is no good reason why they should not have been submitted to the witness Paxson, one of the debtors, for his testimony thereon of their correctness, as was proposed to be done by the garnishee.

The evidence showed that the chain for which judgment was also rendered against the garnishee belonged to the partnership and not to the defendants in attachment. If such was its ownership, it was not subject to this process. Again, the judgment in regard to the chain was plainly erroneous, had its ownership been otherwise. Section 2978 of the Code, which governs such cases, plainly prescribes the judgment to be rendered, and the after proceedings thereon, the observance of which is simple and easy. The garnishee, because he happens to have property of another in his possession, cannot be forced to become its involuntary purchaser by a process of garnishment served upon him. That result can only follow his disobedience of the proper judgment of the court ordering the delivery up of the property, on demand, as provided by the above section.

It is evident the cause was tried and disposed of upon incorrect principles. We, therefore, subserve the ends of justice by reversing the judgment and remanding the cause for another trial, for any substantial error found in the record, though it be such as might be corrected in this court.—Code, § 3658.

What we have said will furnish a sufficient guide to the Circuit Court on another trial.

Reversed and remanded.